ACCEPTED
15-25-00150-CV
FIFTEENTH COURT OF APPEALS
AUSTIN, TEXAS
10/9/2025 9:21 PM
CHRISTOPHER A. PRINE
CLERK

No.15-25-00150-CV

FILED IN
15th COURT OF APPEALS
AUSTIN, TEXAS
10/9/2025 9:21:09 PM
CHRISTOPHER A. PRINE
Clerk

15th Court of Appeals of Texas

_____

*In Re ColossusBets Limited*, Relator

_____

## REAL PARTY IN INTEREST JERRY B. REED'S RESPONSE TO PETITION FOR WRIT OF MANDMAMUS

_____

Original Proceeding from Cause No. 25-BC03A-0007
Business Court of Texas Third Division Austin, Texas

_____

LAGARDE LAW FIRM, P.C.
Richard L. LaGarde
State Bar No. 11819550
Mary LaGarde
State Bar No. 24037645
230 Westcott St., Suite 100
Houston, TX 77007
TEL: (713) 993-0660
richard@lagardelaw.com
mary@lagardelaw.com
ATTORNEYS FOR REAL
PARTY IN INTEREST

# TABLE OF CONTENTS

**ISSUES PRESENTED** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

**INTRODUCTION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

**SUMMARY OF ARGUMENT**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    I.      The Business Court Never Had Subject-Matter Jurisdiction . . .4

    II.    Even if Jurisdiction Attached Initially, the "One-Way Door" Theory Is Wrong And Dangerous. . . . . . . . . . . . . . . . . . . . . . . . . . 6

    III.   Mandamus Is Not Proper. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

**BACKGROUND** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

**STANDARD OF REVIEW** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

**ARGUMENT**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

    I. THE BUSINESS COURT ERRED IN ASSERTING SUBJECT-MATTER JURISDICTION IN THE FIRST PLACE . . . . . . . . . . . . . . . . . 9

       A. The Business Court's June 18, 2025 order denying remand rested on a fundamentally overbroad interpretation of Tex. Gov't Code § 25A.004(b)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

       B. Mere Introduction of Governing Documents as Evidence Does Not Trigger Business Court Jurisdiction . . . . . . . . . . . . . . . . . . . . . . . 10

       C. The "Vehicle to Conceal Identities" Allegation Did Not Convert the Case into a Governance Dispute . . . . . . . . . . . . . . . . . . . . . . . . . . 11

       D. Statutory Context Confirms That § 25A.004(b)(2) Is Meant for Internal Disputes . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

       E. The Court's "Entire Action" Holding Magnifies the Error . . . . .15

       F. The Purported "Governing Documents Hook" Was Legally Insufficient . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

       G. The Court can affirm on this narrow ground . . . . . . . . . . . . . . 17

i

II. EVEN IF JURISDICTION ATTACHED, THE "ONE-WAY DOOR" THEORY IS LEGALLY AND PRACTICALLY UNSOUND . . . . . . . . . 17

    A. Subject-Matter Jurisdiction Depends on Live Pleadings . . . . .17

    B. Continental Coffee Does Not Bar Jurisdictional Reassessment After Pleading Amendments . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

    C. Subject-Matter Jurisdiction Must Be Determined from the Live Pleadings . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

    D. Relator's "One-Way Door" Theory Conflicts with Legislative Design and Sound Judicial Administration. . . . . . . . . . . . . . . . . . . . . . 21

    E. Colossus's "One-Way Door" Theory Misreads Chapter 25A and Conflicts with Texas Jurisdictional Law . . . . . . . . . . . . . . . . . . . . . . . . 24

    F. The Statutory Text Does Not Make Jurisdiction Irrevocable Once Initially Established . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

    G. The Absence of Federal "At Any Time" Language Does Not Eliminate Texas Courts' Ongoing Duty to Reassess Jurisdiction . . . . . 27

    H. North Carolina's Business Court Is Not Analogous to Texas's System . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

    I. Why This Matters for "One-Way Door" . . . . . . . . . . . . . . . . . . . . 31

    J. Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31


III. MANDAMUS RELIEF IS NOT WARRANTED . . . . . . . . . . . . . . . . . . 32

    A.     Mandamus Is an Extraordinary Remedy, Not a Substitute for Appeal . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

    B. Adequate Appellate Remedies Exist . . . . . . . . . . . . . . . . . . . . . .32

    C. Relator's "Systemic Importance" Argument Is Overstated . . . .34

    D.     Relator Has Not Shown Any Concrete Prejudice or Irreparable Harm . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

     E.    Granting Mandamus Here Would Improperly Expand Mandamus Jurisdiction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

     F.    Summary . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

**PRAYER** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

**CERTIFICATE OF SERVICE** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

**CERTIFICATE OF COMPLIANCE** . . . . . . . . . . . . . . . . . . . . . . . . . . 37

# TABLE OF AUTHORITIES

## CASES

*Austin & N.W.R. Co. v. Cluck*, 97 Tex. 172, 77 S.W. 403 (1903)...... 29

*City of Ingleside v. City of Corpus Christi*, 469 S.W.3d 589 (Tex. 2015)............................................................................. 33

*Composite Fabrics of Am., LLC v. Edge Structural Composites, Inc.*, 2016 NCBC LEXIS 11 (N.C. Bus. Ct. Feb. 5, 2016)............... 28

*Continental Coffee Prods. Co. v. Cazarez*, 937 S.W.2d 444 (Tex. 1997)..................................................................... 18

*County of Cameron v. Brown*, 80 S.W.3d 549 (Tex. 2002)............. 19

*Dubai Petroleum Co. v. Kazi*, 12 S.W.3d 71 (Tex. 2000)................ 9

*Holloway v. Fifth Court of Appeals*, 767 S.W.2d 680 (Tex. 1989)..... 9

*In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124 (Tex. 2004)......... 32

*Isbell v. Kenyon-Warner Dredging Co.*, 113 Tex. 528, 261 S.W. 762 (1924)..................................................................... 26

*Olds v. Olds*, 2025 NCBC Order 57 (N.C. Bus. Ct. Aug. 13, 2025)... 28

*Rivercenter Assocs. v. Rivera*, 858 S.W.2d 366 (Tex. 1993)............ 9

*Rusk State Hosp. v. Black*, 392 S.W.3d 88 (Tex. 2012)................. 17

*State Bar of Tex. v. Gomez*, 891 S.W.2d 243 (Tex. 1994)............... 30

*Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440 (Tex. 1993)....................................................................... 26

*Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217 (Tex. 2004)....................................................................... 17

*Walker v. Packer*, 827 S.W.2d 833 (Tex. 1992) (orig. proceeding).... 8

## STATUTES

Tex. Gov't Code § 25A.004(b)............................................. 14

Tex. Gov't Code § 25A.004(b)(2).......................................... 4

Tex. Gov't Code § 25A.004(d)............................................. 13

Tex. Gov't Code § 25A.004(f)............................................. 15

Tex. Gov't Code § 25A.006(d)............................................. 2

Tex. Gov't Code ch. 25A................................................... 3

## RULES

Tex. R. Civ. P. 91a.1..................................................... 18

Tex. R. Civ. P. 91a.5.......................................................... 18
Tex. R. App. P. 9.4(i)(1)..................................................... 37
Tex. R. App. P. 9.4(i)(2)(B)................................................ 37

**OTHER AUTHORITIES**

Jack Buckley DiSorbo, *A Primer on the Texas Business Court*,
76 Baylor L. Rev. 360 (2024)............................................... 14

TO THE HONORABLE FIFTHTEENTH COURT OF APPEALS:

Real Party in Interest, Jerry B. Reed, respectfully asks the Court to deny ColossusBets Limited's Petition for Writ of Mandamus.

## ISSUES PRESENTED

### 1. Subject-Matter Jurisdiction

Did the Business Court possess subject-matter jurisdiction over this case at any point?

### 2. "One-Way Door" Theory

Even if the Business Court initially had jurisdiction, does Texas law recognize a "one-way door" theory that bars remand when subsequent amendments eliminate the jurisdictional basis?

### 3. Mandamus Remedy

Whether mandamus relief is available where an adequate remedy by appeal exists to challenge a remand order on subject-matter jurisdiction grounds.

## INTRODUCTION

ColossusBets seeks the extraordinary and discretionary remedy of mandamus to overturn a straightforward remand order based on Plaintiff's amended live pleadings. The Business Court correctly

recognized that, once Plaintiff amended his petition to withdraw the only alleged jurisdictional basis, it no longer had subject-matter jurisdiction and was required by statute to remand the case to district court. See Tex. Gov't Code § 25A.006(d).

Under settled Texas law, subject-matter jurisdiction is fundamental—it cannot be created by consent, preserved by waiver, or frozen by prior rulings. Jurisdiction is determined from the live pleadings and must be reassessed whenever those pleadings change. Courts therefore have both the power and the duty to revisit jurisdiction as pleadings evolve.

Texas law recognizes no concept of "jurisdictional estoppel." Once pleadings change, jurisdiction must be re-examined; it cannot be "locked in" by an earlier interlocutory ruling. Any contrary rule would nullify the Legislature's command that a Business Court "shall" remand a case when it determines jurisdiction is lacking. See Tex. Gov't Code § 25A.006(d). The Business Court faithfully applied that statutory directive here.

Mandamus is not available to overturn such a routine jurisdictional ruling. It is an extraordinary remedy reserved for clear abuses of

discretion when there is no adequate remedy by appeal. The expense or delay of litigating in district court does not render appeal inadequate, and the novelty of a legal question does not justify extraordinary relief. Because the Business Court correctly recognized its lack of jurisdiction, Relator cannot satisfy either prong of the mandamus standard.

From the outset, this case has had nothing to do with corporate governance. It arises from a sophisticated fraudulent-lottery scheme that diminished Plaintiff Jerry Reed's rightful jackpot by more than $52 million. The alleged misconduct occurred before Rook TX LP or Rook GP LLC even existed and involved counterfeit QR codes and mass printing of invalid tickets—not the rights, duties, or internal operations of a business entity. The Business Court therefore lacked jurisdiction from the start under Chapter 25A, which narrowly confines its docket to internal-affairs disputes among business owners.

The Legislature created the Business Court to resolve genuine corporate-governance controversies, not to warehouse cases that have ceased to involve such issues. Relator's "one-way door" theory would expand the court's reach far beyond its statutory mission, forcing it to try ordinary tort and restitution claims contrary to Chapter 25A's limited

design. The Business Court's remand order avoided precisely that overreach by returning this matter to a court of general jurisdiction.

The petition should be denied.

## SUMMARY OF ARGUMENT

## I. The Business Court Never Had Subject-Matter Jurisdiction.

Plaintiff's claims have always targeted external fraud, restitution, and conspiracy—not internal governance matters. The narrow jurisdictional grant in Tex. Gov't Code § 25A.004(b)(2) applies only to actions "regarding the governance, governing documents, or internal affairs" of an organization. This case does not fit that description. At the time of removal, Plaintiff's live claims were for money had and received, civil conspiracy, aiding and abetting, assisting and participating, concert of action, and negligence per se—all arising from defendants' fraudulent conduct surrounding a rigged lottery scheme. None of these claims constitute an action regarding Rook's internal governance, its governing documents, or its internal affairs. Removal to the Business Court by Rook was therefore improper from the outset.

Defendants manufactured a basis for Business Court removal by seizing on allegations that Rook misrepresented its date of formation when it collected the lottery jackpot. But those allegations were never the gravamen of Plaintiff's claims; they were background facts providing context for the broader fraud scheme. The fraud claim against Rook was later dropped for substantive legal reasons—not as a tactical maneuver. Rook itself filed a Rule 91a motion demonstrating that, even if it misrepresented its formation date to the Lottery Commission, that misrepresentation could not have proximately caused Plaintiff's injury. The premature end of the roll cycle and resulting jackpot reduction were caused by the earlier mass-printing of invalid tickets using illegal methods, not by Rook's subsequent statements regarding its formation date. Once that legal defect became clear, Plaintiff appropriately narrowed the claims by amendment. This was not forum shopping; it was a proper and necessary response to defendants' own legal challenge.

Because Plaintiff's claims never fell within § 25A.004(b)(2), the Business Court erred from the outset in asserting subject-matter jurisdiction where none existed. The August 25, 2025 remand order simply corrected that original jurisdictional error.

## II. Even if Jurisdiction Attached Initially, the "One-Way Door" Theory Is Wrong And Dangerous.

Texas law determines jurisdiction by the live pleadings and allows courts to revisit jurisdiction when claims are amended or dismissed. Chapter 25A does not freeze subject-matter jurisdiction at removal. A "one-way door" rule would force the Business Court to try cases wholly unrelated to its statutory mission after amendments or Rule 91a dismissals—wasting judicial resources and distorting legislative design.

## III. Mandamus Is Not Proper.

Even if the issues were debatable, Relator cannot show clear abuse of discretion or lack of adequate appellate remedy. Jurisdictional rulings are routinely reviewed on appeal after final judgment. This is not the type of extraordinary case warranting mandamus.

### BACKGROUND

Plaintiff Jerry Reed held a legitimate winning Lotto Texas ticket for the May 17, 2023 drawing. He alleges that ColossusBets and related entities conspired to rig the April 22, 2023 drawing by using counterfeit QR codes and unauthorized access to official lottery terminals to print tickets representing nearly every one of the 25.8 million possible number

combinations, thereby guaranteeing themselves the $95 million jackpot. This legally invalid "win" prematurely ended the roll cycle and reduced the jackpot pool available for subsequent drawings, including Reed's.

Defendants' scheme destabilized the Texas Lottery itself. The fallout was swift: the Governor ordered a Texas Rangers investigation; the Lieutenant Governor publicly called it the "biggest fraud ever perpetrated on the Texas Lottery"; the Executive Director of the Lottery Commission resigned; and the Legislature dissolved the Commission altogether.

Mr. Reed filed suit on April 8, 2025, in Travis County District Court. On May 9, 2025, Rook GP, LLC and Rook TX, LP (hereinafter collectively referred to as "Rook") removed the case to the Business Court, contending that allegations that the Rook defendants misrepresented their date of formation when they collected the jackpot triggered subject-matter jurisdiction under Tex. Gov't Code § 25A.004(b)(2).

Mr. Reed moved to remand, explaining that the mere fact the court might consult governing documents to determine the Rook entities' formation date did not transform the case into an action "regarding the governance, governing documents, or internal affairs" of an organization.

On June 18, 2025, the Business Court denied the motion to remand, adopting an expansive view of its jurisdiction.

Later, Rook filed a Rule 91a motion arguing that, even if it misrepresented its formation date to the Lottery Commission, such a misrepresentation could not have been a proximate cause of Reed's injury because the jackpot reduction resulted from the earlier printing of the allegedly invalid tickets. Confronted with this correct legal point, Plaintiff filed an amended petition, expressly removing allegations of fraud regarding Rook's formation date because they were not legally viable. This amendment was a substantive response to a pleading defect identified by defendants—not forum shopping.

On August 25, 2025, Judge Andrews granted Reed's renewed motion to remand, holding that the Business Court no longer had jurisdiction under § 25A.004(b)(2). ColossusBets now seeks mandamus to undo that remand.

## STANDARD OF REVIEW

Mandamus is an extraordinary and discretionary remedy, available only in limited circumstances to correct a clear abuse of discretion when there is no adequate remedy by appeal. *Walker v. Packer*,

827 S.W.2d 833, 839–42 (Tex. 1992) (orig. proceeding) (holding that appeal is not inadequate merely because it entails expense or delay). Mandamus "is not issued as a matter of right." *Rivercenter Assocs. v. Rivera*, 858 S.W.2d 366, 367 (Tex. 1993). The requirement that a relator establish the lack of an adequate appellate remedy is a "fundamental tenet" of mandamus practice. *Holloway v. Fifth Court of Appeals*, 767 S.W.2d 680, 684 (Tex. 1989). Subject-matter-jurisdiction determinations are reviewed de novo, *Dubai Petroleum Co. v. Kazi*, 12 S.W.3d 71, 76–77 (Tex. 2000), but that does not relax the stringent prerequisites for mandamus. See *Walker*, 827 S.W.2d at 839–42; *Rivercenter*, 858 S.W.2d at 367.

## ARGUMENT

I. **THE BUSINESS COURT ERRED IN ASSERTING SUBJECT-MATTER JURISDICTION IN THE FIRST PLACE**

    A. **The Business Court's June 18, 2025 order denying remand rested on a fundamentally overbroad interpretation of Tex. Gov't Code § 25A.004(b)(2).**

Judge Andrews concluded that the case fell within the Business Court's jurisdiction because (1) determining whether the Rook entities misrepresented their formation date "necessarily" implicates their

governing documents, and (2) allegations that the Rook entities were formed as a vehicle to conceal the identities of other defendants implicates their internal governance. Neither rationale withstands scrutiny.

## B. Mere Introduction of Governing Documents as Evidence Does Not Trigger Business Court Jurisdiction.

The Business Court's first rationale effectively holds that any lawsuit requiring examination of an entity's formation papers automatically becomes "an action regarding the…governing documents" of an organization. That interpretation is inconsistent with both the text and structure of § 25A.004(b)(2).

Section 25A.004(b)(2) applies only to "an action regarding the governance, governing documents, or internal affairs" of an organization. The Legislature's use of "regarding" requires that the subject of the action itself concern governing documents—not that such documents might be referenced incidentally as evidence. As Reed's Reply Brief explained, the June 18 Order improperly collapses subject matter into evidentiary mechanics, transforming routine evidentiary references into jurisdictional hooks.

Courts routinely review governing documents as evidence in standard civil disputes, such as contract, fraud, or agency cases, without thereby converting those disputes into internal-governance controversies. If Judge Andrews' interpretation were correct, Business Court jurisdiction would swallow much of the civil docket, contrary to the Legislature's deliberate choice to limit § 25A.004(b) to a narrow class of governance disputes.

The text of § 25A.004(b)(2) simply does not support this expansive reading. The Legislature did not write "actions that reference governing documents"; it wrote "actions regarding" such documents. The Business Court's construction therefore exceeds the statute's textual bounds.

### C. The "Vehicle to Conceal Identities" Allegation Did Not Convert the Case into a Governance Dispute

The court's second rationale—that allegations Rook was formed "as a vehicle to conceal the identities of the members" necessarily implicate internal governance—misapprehends the legal nature of those allegations.

An entity's purpose or motive for formation is not the same as an internal governance dispute under Tex. Gov't Code § 25A.004(b)(2).

Jurisdiction under that provision turns on whether the action involves matters such as the rights, duties, or powers of members, managers, or governing documents—not on why individuals created a business entity in the first place or how they later used it. Alleging that other defendants formed Rook as part of a broader fraudulent scheme does not require adjudication of Rook's internal affairs any more than alleging that a shell company was used to launder funds would transform a money-laundering prosecution into a corporate governance case.

If mere allegations about why an entity was formed could trigger Business Court jurisdiction, virtually every fraud or veil-piercing case would be swept into the Business Court—an outcome plainly inconsistent with Chapter 25A's structure, which reserves jurisdiction for genuine internal-affairs disputes, not generalized fraud allegations.

The gravamen of these allegations concerns external conduct: defendants allegedly rigged the lottery and used Rook as a façade to hide the participants' identities. Resolving those issues involves tracing fraudulent actions and financial flows—not interpreting operating agreements, determining member rights, or adjudicating corporate control disputes. The Business Court's attempt to treat motive-for-

formation allegations as governance issues improperly stretches § 25A.004(b)(2) far beyond its text and purpose.

### D. Statutory Context Confirms That § 25A.004(b)(2) Is Meant for Internal Disputes

Reading § 25A.004(b)(2) in context confirms the error. Adjoining subsections (b)(1) and (b)(3)–(7) address internal disputes among owners and fiduciaries, such as derivative actions and fiduciary duty claims. By contrast, external commercial disputes are addressed in subsection (d), with higher amount-in-controversy thresholds. This internal–external structure was a deliberate legislative choice.

One legal commentator has described all seven categories of actions outlined in § 25A.004(b)(1)–(7) as "internal" business disputes, contrasting them with the "external" business disputes outlined in § 25A.004(d)(1)–(3):

The first category of cases that fall within the Business Court's jurisdiction are those in which the amount in controversy exceeds $5 million and the subject concerns at least one of several subjects…. Together, these categories cover most forms of internal business disputes; i.e., disputes about the business's management, claims between shareholders and the company, and so on. External business disputes, i.e., actions involving a company and a separate person or business, are reserved for the next category of jurisdiction, where the amount in controversy is heightened to $10 million.

Jack Buckley DiSorbo, *A Primer on the Texas Business Court*, 76 Baylor L. Rev. 360, 371-72 (2024).

There are seven categories of actions listed in Tex. Gov't Code § 25A.004(b). Subsections (b)(1), and (b)(3)-(7) reveal a pattern of internal disputes-- actions that directly challenge or seek to enforce specific rights or duties of shareholders, owners, and managers of Texas businesses. These six subsections target actions that are inherently about corporate law matters, not actions that merely touch upon them tangentially. Applying the *in pari materia* principle, courts should interpret subsection (b)(2) in harmony with the other six adjoining subsections, all of which focus on internal business disputes. By contrast, Plaintiff's claims belong in the category of external business disputes—conflicts between a third

party and the defendants—rather than internal governance disputes among entity insiders. Defendants' effort to reframe the case as an internal business dispute falling within the jurisdiction of the Business Court was, at best, disingenuous.

The Business Court's interpretation of its own subject-matter jurisdiction obliterates the legislative structure by sweeping into (b)(2) any external dispute in which governing documents might be consulted for evidentiary purposes, thereby erasing the line between subsections (b) and (d). That is not what the Legislature intended.

**E. The Court's "Entire Action" Holding Magnifies the Error**

Having found that an incidental issue supposedly fell within § 25A.004(b)(2), Judge Andrews asserted jurisdiction over the entire action, reasoning that the statute speaks in terms of "actions" rather than "claims" (Op. at 7–8) . This approach sidesteps § 25A.004(f), which makes supplemental jurisdiction over non-(b) claims consensual. If allowed to stand, the Business Court's reasoning would enable defendants to bootstrap entire cases into the Business Court based on a fleeting, collateral reference to a governing document—without satisfying the statute's express safeguards.

### F. The Purported "Governing Documents Hook" Was Legally Insufficient

Finally, the jurisdictional hook defendants identified—the alleged misrepresentation of Rook's formation date necessitating a reference to governing documents—was legally insubstantial. Rook's own Rule 91a motion explained that any such misrepresentation could not have proximately caused Reed's injury, because the jackpot reduction stemmed from the earlier counterfeit-ticket scheme. Reed accordingly dropped the fraud claim by amendment after Rook filed its Rule 91a motion. A non-viable theory cannot support subject-matter jurisdiction. This reinforces that the Business Court never had jurisdiction to begin with.

In short: The Business Court's June 18 order erred because it (1) treated incidental evidentiary references as dispositive of jurisdiction, (2) mischaracterized allegations about other defendants' motives as Rook's governance issues, (3) ignored the statute's internal–external structure, (4) improperly extended jurisdiction to the entire action, and (5) relied on a legally deficient jurisdictional hook. The August 25 remand order merely corrected this initial error, and ColossusBets cannot use

mandamus to revive a jurisdictional theory that the statute does not support.

### G. The Court can affirm on this narrow ground.

Because the Business Court never had jurisdiction in the first place, the remand order simply corrected an error. No "one-way door" issue need be reached.

## II. Even If Jurisdiction Attached, The "One-Way Door" Theory Is Legally And Practically Unsound.

### A. Subject-Matter Jurisdiction Depends on Live Pleadings.

Texas law is clear that subject-matter jurisdiction is determined from the live pleadings. When pleadings are amended, the court must reassess subject-matter jurisdiction in light of the new allegations. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226–27 (Tex. 2004) (holding that courts determine jurisdiction from the pleadings and must afford amendment if jurisdictional defects are curable), reaffirmed by *Rusk State Hosp. v. Black*, 392 S.W.3d 88, 95 (Tex. 2012) (holding that courts determine jurisdiction from the live pleadings and jurisdictional evidence, granting leave to amend where appropriate).

Rule 91a reinforces this principle by requiring the court to decide a motion to dismiss based on the then-operative petition and by permitting amendment before the hearing. Tex. R. Civ. P. 91a.1, 91a.5.

Section 25A.006(d) likewise mandates remand "if removal was improper." Nothing in the statute freezes jurisdiction at the moment of removal; courts must examine jurisdiction under the live pleadings as they exist when the issue is decided.

### B. *Continental Coffee* Does Not Bar Jurisdictional Reassessment After Pleading Amendments.

Colossus's reliance on *Continental Coffee Products Co. v. Cazarez*, 937 S.W.2d 444 (Tex. 1997), is misplaced. *Continental Coffee* involved a statutory county court's **monetary jurisdiction**, not **limited subject-matter jurisdiction**. There, the plaintiff's original petition properly alleged an amount in controversy within the court's monetary jurisdictional limits, but later amendments increased the damages sought due to the passage of time. The Texas Supreme Court held that this did not divest jurisdiction because "jurisdiction is based on the allegations in the petition about the amount in controversy" and "as a

general rule, where jurisdiction is once lawfully and properly acquired, no later fact or event can defeat the court's jurisdiction." *Id.* at 449.

That rule applies narrowly to cases where jurisdictional amount is properly pleaded and later factual developments—such as the passage of time—cause damages to increase. It has no application to a Business Court case in which the plaintiff amends the live petition to remove the only statutory category supporting subject-matter jurisdiction under Tex. Gov't Code § 25A.004(b). Unlike amount-in-controversy rules, the Business Court's limited subject-matter jurisdiction depends on the continued presence of qualifying allegations in the live pleadings. When those allegations are withdrawn, the court's statutory jurisdiction ceases, and § 25A.006(d) mandates remand. *Continental Coffee* did not involve, and does not govern, that circumstance.

Texas law is clear that subject-matter jurisdiction is determined from the live pleadings. When those pleadings are amended, courts must reassess jurisdiction in light of the new allegations. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226–27 (Tex. 2004); *County of Cameron v. Brown*, 80 S.W.3d 549, 555 (Tex. 2002). Additionally, § 25A.006(d) of the Government Code mandates that "[i]f the business

court does not have jurisdiction of the action, the business court **shall** remand the action to the court in which the action was originally filed," underscoring that jurisdiction is not frozen at the moment of removal but must be assessed under the pleadings as they exist when the issue is decided.

In short, *Continental Coffee* does not prevent a court of statutorily limited subject-matter jurisdiction from recognizing that jurisdiction never validly attached, or that amended pleadings eliminated the only alleged jurisdictional basis. That is precisely what occurred here: the Business Court's initial assertion of jurisdiction was erroneous, and Mr. Reed's amended petition removed the only purported jurisdictional hook. Under settled Texas law, the Business Court properly revisited its jurisdiction and remanded the case.

Relator's invocation of *Continental Coffee* is therefore inapposite. The relevant authorities are those addressing subject-matter jurisdictional pleading amendments, not finality principles arising in unrelated monetary-jurisdiction contexts.

## C. Subject-Matter Jurisdiction Must Be Determined from the Live Pleadings.

The Texas Supreme Court has consistently held that subject-matter jurisdiction depends on the **live pleadings** at the time of the jurisdictional ruling. *Miranda*, 133 S.W.3d at 226–27; *Rusk State Hosp.*, 392 S.W.3d at 95. When an amended petition removes the jurisdictional facts, jurisdiction is lost. That is precisely what occurred here: Plaintiff's amended petition eliminated the jurisdictional hook on which Business Court jurisdiction rested. Because the live pleading no longer invoked Business Court jurisdiction, the Business Court correctly determined that it lacked subject-matter jurisdiction and remanded. This ruling was not an abuse of discretion, and mandamus does not lie to compel a court to exercise subject-matter jurisdiction it does not possess.

## D. Relator's "One-Way Door" Theory Conflicts with Legislative Design and Sound Judicial Administration.

Relator's "one-way door" theory would produce results the Legislature could not have intended. If jurisdiction were permanently fixed at the moment of removal—even where later pleadings or Rule 91a dismissals eliminate the sole jurisdictional hook—the Business Court

would be compelled to retain and adjudicate cases wholly unrelated to the subject matters assigned to it by statute.

This case illustrates the problem. Even under the Business Court's initial view, the alleged jurisdictional basis was an incidental reference to Rook's formation date. Once that legally insubstantial allegation was removed by amendment, the case involved only external fraud, restitution, and conspiracy claims concerning the rigging of a lottery drawing. Forcing the Business Court to retain such a case—despite the absence of any live governance or internal-affairs issue—would squander specialized judicial resources and distort the court's intended role.

The problem is not hypothetical. Suppose the sole jurisdictional cause of action relied upon for removal is dismissed early in the litigation under Rule 91a. Under Relator's theory, the Business Court would nonetheless be required to proceed to trial in a case bearing no connection to its statutory mission. That outcome would subvert both the text and structure of Chapter 25A.

Chapter 25A was enacted to create specialized dockets for complex business governance disputes, not to convert the Business Court into a general civil trial court of plenary jurisdiction. Subsections (b)(1)–(7)

carefully delineate the types of internal business disputes that qualify, while subsection (d) addresses high-value external commercial disputes. Reading the statute as Relator proposes would collapse this carefully drawn structure, pulling tort, restitution, and negligence cases into the Business Court merely because of allegations that are later withdrawn or dismissed.

Worse still, Relator's rule would create perverse incentives. Defendants could remove cases to the Business Court based on tenuous, incidental allegations and then resist remand even after those allegations are eliminated by amendment or Rule 91a dismissal. This would invite gamesmanship, allow defendants to manipulate forum selection, and burden the Business Court with cases having no meaningful connection to its core subject matter.

By contrast, the rule applied by Judge Andrews—that jurisdiction must be reassessed based on the live pleadings—is faithful to the statutory text and consistent with sound judicial administration. It ensures that the Business Court adjudicates only those disputes the Legislature actually assigned to it, while allowing ordinary tort, fraud,

and restitution cases to proceed in the general district courts where they belong.

### E. Colossus's "One-Way Door" Theory Misreads Chapter 25A and Conflicts with Texas Jurisdictional Law.

Colossus advances three reasons why, in its view, the Business Court should not reassess subject-matter jurisdiction after it has once been established: (1) that Chapter 25A provides for a "prompt and final" one-time jurisdictional determination; (2) that Texas law, unlike federal removal statutes, does not authorize remand "at any time" before judgment; and (3) that North Carolina's business court system treats jurisdiction as a "one-way door" and Texas should do likewise. Pet. at 27–34. Each contention fails.

### F. The Statutory Text Does Not Make Jurisdiction Irrevocable Once Initially Established

Colossus first relies on scattered provisions of Chapter 25A and Rule 355(f)(1) to argue that the Business Court makes a single, "prompt and final" determination of jurisdiction at the time of removal, after which jurisdiction cannot be revisited. Pet. at 27–29. According to

Colossus, once removal is "proper," subject-matter jurisdiction is fixed "for the rest of the life of the case." Id. at 27.

That is incorrect. Nothing in Chapter 25A provides that subject-matter jurisdiction, once determined, is irrevocable. Section 25A.006(d) expressly provides that the Business Court "shall" remand the case if the court determines that it does not have jurisdiction. Tex. Gov't Code § 25A.006(d) (emphasis added). The statute does not limit that obligation to defects existing only at the moment of removal. If, at any time thereafter, the live pleadings no longer allege facts bringing the case within Chapter 25A, then the Business Court "does not have jurisdiction," and remand is mandatory. Id.

Colossus's reading also conflicts with settled Texas law that subject-matter jurisdiction depends on the live pleadings at the time the court rules. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226–27 (Tex. 2004) (holding that courts determine jurisdiction from the pleadings and must afford amendment if jurisdictional defects are curable), reaffirmed by *Rusk State Hosp. v. Black*, 392 S.W.3d 88, 95 (Tex. 2012) (holding that courts determine jurisdiction from the live pleadings and jurisdictional evidence, granting leave to amend where appropriate).

Courts have both the power and the duty to reassess jurisdiction whenever pleadings change. *County of Cameron v. Brown,* 80 S.W.3d 549, 555 (Tex. 2002) (holding that courts must examine pleadings to determine jurisdiction and reassess jurisdiction if pleadings change, granting leave to amend if defects are curable); *Isbell v. Kenyon-Warner Dredging Co.,* 113 Tex. 528, 261 S.W. 762, 763 (1924) (holding that when an amended petition sets up a new cause of action and abandons the old, it "speaks from its own date" and must itself support jurisdiction).

That is precisely what happened here: Plaintiff's amended petition removed the jurisdictional allegations that initially invoked Business Court jurisdiction. The Business Court properly reassessed its jurisdiction based on the amended pleading, as Texas law requires.

Finally, Colossus's policy concerns about efficiency and stability cannot override jurisdictional limits. Texas courts have repeatedly rejected attempts to create jurisdiction by waiver, consent, or prior rulings. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.,* 852 S.W.2d 440, 443–44 (Tex. 1993) ("Subject matter jurisdiction is essential to the authority of a court to decide a case…. Subject matter jurisdiction is never

presumed and cannot be waived."). Chapter 25A requires prompt rulings at removal, not perpetual jurisdiction despite changed pleadings.

### G. The Absence of Federal "At Any Time" Language Does Not Eliminate Texas Courts' Ongoing Duty to Reassess Jurisdiction

Colossus next argues that, unlike federal removal statutes, Chapter 25A lacks language authorizing remand "at any time before final judgment," demonstrating legislative intent to foreclose later jurisdictional challenges. Pet. at 29–32. This is a red herring.

Texas courts do not need a statutory "at any time" clause to revisit subject-matter jurisdiction because Texas law already provides that jurisdiction can be challenged at any time and cannot be conferred by waiver, estoppel, or prior interlocutory rulings. *Rusk*, 392 S.W.3d at 95–96; *Tex. Ass'n of Bus.*, 852 S.W.2d at 443–44. Courts have an independent, ongoing obligation to ensure they possess jurisdiction. *Miranda*, 133 S.W.3d at 226–27.

Colossus's argument would make the Business Court unique among Texas courts—able to retain cases even when its statutory jurisdictional prerequisites no longer exist. Nothing in Chapter 25A suggests the Legislature intended to create such a special, jurisdiction-by-estoppel

regime for this new tribunal. To the contrary, § 25A.006(d)'s remand mandate confirms the Legislature expected the court to remand whenever it lacks jurisdiction, not just at removal.

## H. North Carolina's Business Court Is Not Analogous to Texas's System

Relator's reliance on *Olds v. Olds*, 2025 NCBC Order 57 (Aug. 13, 2025), is misplaced for a simple but fundamental reason: North Carolina's Business Court is not a separate court of limited subject-matter jurisdiction but an administrative division of the Superior Court. As *Olds* itself explains:

> The [Business] Court is merely an administrative division of the superior court in the General Court of Justice. A Business Court judge is a special superior court judge who is assigned cases that originate from counties across the state… [and] proceeds with the same jurisdiction and authority as any other superior court judge."

Id. ¶ 13 (quoting *Composite Fabrics of Am., LLC v. Edge Structural Composites, Inc.*, 2016 NCBC LEXIS 11, at *27).

Subject-matter jurisdiction in North Carolina is vested in the Superior Court itself. Designation to the Business Court does not alter or

confer jurisdiction, which remains with the Superior Court. *Olds*, slip op. at 26–28. Thus, when *Olds* held that a designation "once ordered" cannot be withdrawn by later pleading amendments, it addressed case assignment within a single court of general jurisdiction, not the existence of subject-matter jurisdiction in a separate court system with limited statutory jurisdiction.

Texas's system is entirely different. The Texas Business Court is a court of limited statutory jurisdiction, distinct from the district courts. Tex. Gov't Code § 25A.004(b). A case may remain in the Business Court only so long as the live pleadings invoke one of the statutory categories in Chapter 25A. If amended pleadings or a Rule 91a dismissal eliminate those jurisdictional allegations, the court "shall remand the case." Tex. Gov't Code § 25A.006(d).

This distinction is dispositive. *Olds* rests on the administrative nature of North Carolina's Business Court, which "is not a court of separate jurisdiction." *Olds*, slip op. at 13. Texas Business Courts, by contrast, are creatures of statute whose jurisdiction exists only when the Legislature's conditions are satisfied. *Austin & N.W.R. Co. v. Cluck*, 97 Tex. 172, 77 S.W. 403, 405 (1903) ("[T]here can be no doubt that the

courts of Texas must look to the Constitution of this state, **the enactments of the Legislature**, and the common law for their authority to proceed ....")(emphasis added); *State Bar of Tex. v. Gomez*, 891 S.W.2d 243, 245 (Tex. 1994) ("As a general proposition, before a court may address the merits of any case, the court must have…jurisdiction over the subject matter….")

North Carolina's "designation" decisions therefore have no bearing on questions of Texas subject-matter jurisdiction, and Relator's analogy fails.

## I. Why This Matters for "One-Way Door".

Relator argues that Texas should adopt North Carolina's "one-way door" rule. But that rule only makes sense in North Carolina because a change in pleadings never affects the Superior Court's jurisdiction. In Texas, jurisdiction depends on live pleadings and statutory fit; it can—and must—be revisited when pleadings change. *Tex. Dep't of Parks & Wildlife v. Miranda,* 133 S.W.3d 217, 226–27 (Tex. 2004); *Rusk State Hosp. v. Black,* 392 S.W.3d 88, 95 (Tex. 2012).

Importing North Carolina's administrative "designation" doctrine into Texas's jurisdictional scheme would directly contradict §

25A.006(d)'s remand requirement and longstanding Texas pleading-based jurisdictional law. It would improperly transform a limited jurisdiction court into a permanent forum regardless of the claims actually alleged.

## J. Conclusion.

Colossus's three arguments share a fundamental flaw: they treat subject-matter jurisdiction as fixed at removal and immune to subsequent pleading changes. Texas law is to the contrary. Jurisdiction must exist under the live pleadings at the time of decision, and courts must reassess it whenever those pleadings change. *Miranda*, 133 S.W.3d at 226–27; *Rusk*, 392 S.W.3d at 95–96. Section 25A.006(d) confirms that the Business Court must remand when it determines it lacks jurisdiction.

Because Plaintiff's amended petition eliminated the only jurisdictional basis for Business Court jurisdiction, the court correctly concluded it lacked subject-matter jurisdiction and remanded the case. Colossus's "one-way door" theory finds no support in Chapter 25A or Texas precedent, and provides no basis for mandamus relief.

# III. MANDAMUS RELIEF IS NOT WARRANTED

## A. Mandamus Is an Extraordinary Remedy, Not a Substitute for Appeal.

Mandamus is "an extraordinary remedy" that is available only when the trial court has clearly abused its discretion and the relator lacks an adequate remedy by appeal. *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135–36 (Tex. 2004). It is not a vehicle to correct ordinary legal errors or to obtain interlocutory review of interesting or important legal issues. Id. at 136–37.

Here, Relator's complaint is that the Business Court erred by remanding this case for lack of subject-matter jurisdiction. Even if that were true (it is not), this is a legal issue that can be reviewed and corrected through the normal appellate process.

## B. Adequate Appellate Remedies Exist.

Relator's core complaint is that the Business Court erred by remanding the case. But Texas law is clear: jurisdictional rulings can be fully and effectively reviewed on appeal after final judgment. See *Dubai Petroleum Co. v. Kazi*, 12 S.W.3d 71, 76–77 (Tex. 2000) (reviewed on appeal after judgment, confirming that jurisdictional rulings are

correctable through the ordinary appellate process); *City of Ingleside v. City of Corpus Christi,* 469 S.W.3d 589, 590–93 (Tex. 2015) (reviewing denial of plea to the jurisdiction on direct appeal; illustrating that jurisdictional issues are correctable through ordinary appellate review).

If the district court ultimately enters judgment, ColossusBets can raise the Business Court's remand as an error on appeal. There is nothing "irremediable" about this situation.

The expense and inconvenience of having to proceed to trial in district court before appealing the Business Court's jurisdictional ruling do not justify mandamus relief. As the Supreme Court explained in *Walker v. Packer*, 827 S.W.2d 833, 842 (Tex. 1992):

> We further hold that an appellate remedy is not inadequate merely because it may involve more expense or delay than obtaining an extraordinary writ. As we observed in *Iley v. Hughes,* the 'delay in getting questions decided through the appellate process ... will not justify intervention by appellate courts through the extraordinary writ of mandamus. Interference is justified only when parties stand to lose their substantial rights.'" (quoting 158 Tex. 362, 368, 311 S.W.2d 648, 652 (1958)).

Unlike cases involving discovery orders threatening privileged information or ultra vires injunctions, nothing about this remand order

prevents eventual appellate correction. See *In re Prudential Ins. Co. of Am.,* 148 S.W.3d 124, 136–37 (Tex. 2004) (identifying exceptional situations warranting mandamus). The ability to appeal and correct any jurisdictional ruling after final judgment defeats Relator's claim that mandamus is necessary here.

## C. Relator's "Systemic Importance" Argument Is Overstated.

ColossusBets argues that this case presents "an issue of first impression" concerning Business Court jurisdiction, and that mandamus is needed to "give guidance." However, the novelty of a legal issue does not transform an ordinary jurisdictional ruling into an extraordinary case warranting mandamus. See *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 136–37 (Tex. 2004) (explaining that mandamus is not warranted merely because a trial court's order is wrong or the issue is important).

The Business Court is new, but that does not make every jurisdictional disagreement "exceptional." Indeed, if mandamus became the default vehicle for every jurisdictional dispute involving the Business Court, it would flood appellate dockets and short-circuit the ordinary

development of jurisprudence through final judgments. *Prudential* explicitly warns against such expansion. 148 S.W.3d at 136–37.

### D. Relator Has Not Shown Any Concrete Prejudice or Irreparable Harm

ColossusBets has not identified any prejudice that cannot be remedied on appeal. The case is in early procedural posture. The mere fact that Relator would prefer to litigate in a different forum is not irreparable harm.

### E. Granting Mandamus Here Would Improperly Expand Mandamus Jurisdiction.

Finally, granting mandamus in this case would open the door for every remand decision involving Business Court jurisdiction to be immediately challenged by mandamus. That is precisely the kind of piecemeal appellate review Texas law seeks to avoid. *Prudential*, 148 S.W.3d at 136. The Legislature could have authorized interlocutory appeals for Business Court remand orders if it wished—but it did not. See Tex. Gov't Code Ch. 25A. That omission is deliberate. Courts should not judicially create interlocutory review through mandamus where the Legislature declined to do so.

### F. Summary.

This is not one of the rare, extraordinary cases that warrants mandamus. The Business Court remand order involves an ordinary legal question, subject to normal appellate correction, with no irreparable harm. Mandamus should therefore be denied.

## PRAYER

For the foregoing reasons, Real Party in Interest Jerry B. Reed respectfully requests that the Court deny Relator's Petition for Writ of Mandamus.

DATED: October 9, 2025.


Respectfully submitted,
LAGARDE LAW FIRM, P.C.


/s/ *Richard L. LaGarde*
Richard L. LaGarde
State Bar No. 11819550
Mary LaGarde
State Bar No. 24037645
230 Westcott St., Suite 100
Houston, TX 77007
TEL: (713) 993-0660
richard@lagardelaw.com
mary@lagardelaw.com
ATTORNEYS FOR
REAL PARTY IN INTEREST

## CERTIFICATE OF SERVICE

I certify that, on October 9, 2025, a true and correct copy of the Response of the Real Party in Interest to Relator's Petition for Mandamus was served on all counsel of record via the Court's electronic-notification system. The Honorable Melissa Andrews, Respondent, was served via email to her court coordinator.

/s/ *Richard LaGarde*
Richard LaGarde

## CERTIFICATE OF COMPLIANCE

This brief complies with the length limitations of TEX. R. APP. P. 9.4(i)(2)(B) because this brief consists of 6,097 words, excluding the parts of the brief exempted by TEX. R. APP. P. 9.4(i)(1).

/s/ *Richard LaGarde*
Richard LaGarde

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Richard LaGarde on behalf of Richard LaGarde
Bar No. 11819550
richard@lagardelaw.com
Envelope ID: 106683178
Filing Code Description: Original Proceeding Response
Filing Description: Real Person in Interest's Response to Petition for Writ of Mandamus
Status as of 10/10/2025 7:02 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| David Harrell | 793905 | david.harrell@troutman.com | 10/9/2025 9:21:09 PM | SENT |
| Richard Lagarde | 11819550 | richard@lagardelaw.com | 10/9/2025 9:21:09 PM | SENT |
| Manfred Sternberg | 19175775 | manfred@msternberg.com | 10/9/2025 9:21:09 PM | SENT |
| Aimee Oleson | 24036391 | aoleson@sheppardmullin.com | 10/9/2025 9:21:09 PM | SENT |
| Mary Lagarde | 24037645 | mary@lagardelaw.com | 10/9/2025 9:21:09 PM | SENT |
| Jeffrey Adams | 24006736 | jeff@jeffadamslaw.com | 10/9/2025 9:21:09 PM | SENT |
| Jon Smith | 18630750 | jon@jonmichaelsmith.com | 10/9/2025 9:21:09 PM | SENT |
| Mia Lorick | 24091415 | Mia.Lorick@troutman.com | 10/9/2025 9:21:09 PM | SENT |
| Charles Conrad | | charles.conrad@pillsburylaw.com | 10/9/2025 9:21:09 PM | SENT |
| Grace Miller | 24132499 | gmiller@sheppardmullin.com | 10/9/2025 9:21:09 PM | SENT |
| Lindsey Mitchell | | lindsey.mitchell@pillsburylaw.com | 10/9/2025 9:21:09 PM | SENT |
| Derrick Carson | | Derrick.carson@pillsburylaw.com | 10/9/2025 9:21:09 PM | SENT |
| Bradden Pippin | 24143893 | bradden.pippin@troutman.com | 10/9/2025 9:21:09 PM | SENT |
| Kathleen Laird | | Kathleen.Laird@Troutman.com | 10/9/2025 9:21:09 PM | SENT |
| Jon Sink | | jonathan.sink@pillsburylaw.com | 10/9/2025 9:21:09 PM | SENT |
| Honorable Melissa Andrews | | bcdivision3a@txcourts.gov | 10/9/2025 9:21:09 PM | SENT |
| Ryan Dickinson | | ryandickinson79@gmail.com | 10/9/2025 9:21:09 PM | SENT |